## NATHAN HABER et al. *v.* A. LANE.

1. CIRCUIT COURT — NEW TRIAL — SURPRISE — PRACTICE. — To entitle a party to a new trial on the ground of surprise, the showing made must discover merits, and the surprise must be such as care and prudence could not provide against.

2. SAME — SAME — SAME — SAME. — Although a defendant offer a sufficient reason why he did not attend and testify on the trial, yet if his presence, and that of his absent witnesses, would not have produced a different result, a new trial will not be granted.

3. SAME — SAME — SAME — SAME. — In applications to displace verdicts regularly rendered, the applicant must make it manifest that injustice has been done. A full and complete defense must be set up, so as to convince the court that upon another trial a different result would be reached.

ERROR to the circuit court of Copiah county. MILLSAPS, J.

On the 12th of August, 1870, defendant in error recovered a judgment in replevin against the plaintiffs in error for three hundred and eighty-two pounds seed cotton, valued at $24 83, also the sum of $34 damages. Whereupon plaintiff in error entered a motion for a new trial, as follows:

"A. Lane
   v.
Nathan Haber.     The defendant moves the court to set

aside the verdict and judgment rendered in this cause, for the reasons stated and set forth in the affidavits filed in this cause.

*King,* contra.                    *Mayes,* for motion."

This motion having been argued and submitted, was by the court overruled, and a new trial refused, to which judgment the defendant below excepted. On the trial of said motion, and in support of the same, the following affidavits were read:

" A. Lane }
    v.
Nathan Haber. }    Personally appeared in open court Nathan Haber, defendant in the two cases in replevin, Nos. 77 and 67, and on oath says, that he is advised and believes that he had a good and available defense in law in the case of A. Lane against himself and others, and in the case of George W. Mercier against himself and others, wherein judgment was rendered against the defendants at this term of the court; that he was himself a material witness in said causes, and expected to prove by himself and other witnesses whom he had summoned, as also by others whom he confidently expected to have present at the trial of said suits, that the defendant, in an attachment suit he had instituted against W. H. B. Lane and the plaintiffs in the above-stated cases, were partners in planting in the year 1869, and that a special contract was made by himself and said partner, W. H. B. Lane, that affiant should furnish to said partners their supplies during said year, to enable them to make a crop; that said W. H. B. Lane, partner as aforesaid, offered to give a lien on the crop to be raised by said partners, to secure him for said advances, which he declined to take, because he had every confidence in said W. H. B. Lane, who was then acting as a book-keeper in said affiant's store; that he expected also to prove that the said partner, A. Lane, in pursuance of said contract, came with oxen and wagon, and sometimes with wheelbarrow, for supplies for said partners, which were furnished to him by his book-keeper, Lane (and were used by said partners in the

partnership business), who would charge the articles supplied up to himself as the chief member of the partnership. He also expects to prove that the cotton levied on was partnership cotton, and that also the wagon, oxen and other personal property taken by the writ of attachment above named, was also partnership property, produced by said Mercier, by converting other partnership property into said wagon, oxen, yoke bows, etc. ; that said W. H. B. Lane and his horse worked at leisure times, when he could be spared from the store, in said crop ; that said property, cotton, wagon, oxen, etc., levied on, was all of it partnership property, and subject under the special contract to the writ of attachment, by virtue of which it was seized by this affiant; that at the beginning of this court the hand of God was upon this affiant, and he was grievously afflicted in his family ; that he sent word to his attorney that it was impossible for him to attend court because of these afflictions, and that if he could do so to continue his causes ; that he was afterward informed that the causes were continued ; that on Sunday before last his wife was buried, and that by the observance of his religious faith he was forbidden to appear in public for the transaction of any business whatever unconnected with the funeral, for a period of from four to five days ; that, in addition to this forbid, he was wholly disqualified by his great affliction to transact any business whatever, except as aforesaid ; that his personal presence in view of his evidence was essential to the defense of the above cases ; that this affidavit, to set aside said judgments, is not made for delay, but that justice may be done.

Sworn to and subscribed before me, } Nathan Haber.
this 15th day of August, 1870. }

H. Dunning, Clerk.

"STATE OF MISSISSIPPI, } *ss.*
*Copiah County*, }

Personally appeared before me the undersigned an acting justice of the peace, in and for the county and state aforesaid, Moses J. Ferguson, who, being by me first duly sworn

on oath, says, that he is the family physician of Nathan Haber, that in his opinion said Haber, for not less than five days after the burial of his wife, on the 7th day of August, 1870, was, from his mental affliction and distress at his bereavement, wholly unfit and disqualified for business ; that he understood when he attended court the present term of the court that the causes of Haber would not be tried, because of the situation of his wife, who was then hopelessly ill, and so informed Haber ; that he, affiant, may himself have been misled, but he certainly misled Haber in regard to the trial of his causes.

Sworn to and subscribed before me ⎫
    this 18th day of August, 1870.  ⎭     M. J. Ferguson.

Benj. King, Jr., Mayor, and ex officio J. P."

As to the mental condition of Haber at the date of the judgments against him, like affidavits as the above were in evidence by James E. Weymouth, W. C. Loving, P. W. Elmore, and J. C. Drane.

The bill of exceptions shows the wife of Haber was buried on the seventh. The judgment was rendered against him on the 12th August, 1870.

On the part of the plaintiff below, John B. Deason, being sworn, testified as follows : That on Friday, the 12th of August, 1870, he saw the defendant Nathan Haber in the town of Hazlehurst, about ten miles above Beauregard, the place of residence of said Haber, on the train in the town of Hazlehurst ; that the train was going south ; that he did not know where Haber had been ; that he believes Haber told him ; that he does not remember what he said about it. This was all the evidence.

*H. B. Mayes*, for plaintiffs in error.

By statute the parties to a suit are generally competent witnesses. Rev. Code, p. 510, art. 190. When a party deems his testimony immaterial, and proposes to testify in his own behalf, it is not necessary that he apply for and have a subpœna executed on himself, for if he is not pres-

ent at the trial to testify, he will certainly not be present to take advantage of his own absence by an application for a continuance. He should not be allowed costs for the issuance of such subpœna, for it is idle to issue it, and useless. If he shows sufficient excuse for his absence, and that his testimony is material, and might have produced a different result, on motion, a new trial should be granted, for he is as much entitled to the benefit of his own testimony as of that of any other witness.

On the showing made by Haber in his affidavit, supported by the affidavits of Dr. Ferguson, Drane and others, a new trial should have been awarded by the court below. Graham on New Trials, p. 161, *et seq.;* Peebles v. Ralls, 1 Litt. 24, in point; Schenck v. Woolsey, 3 Caines, 100. Besides the other sufficient causes appearing in the affidavits for the absence of Haber at the trial of the cause, he appears to have been misled by Dr. Ferguson, and supposed the cause had been continued. Haber had sent requesting a continuance, because of the sickness of his wife, who soon after died, and he was informed by Ferguson that the cause had been continued. Sayer v. Fink, 2 Caines, 336 ; Schenck v. Woolsey, 3 ib. 100 ; 1 Litt. 24.

*B. Taylor*, for defendant in error.

The record does not show the testimony submitted to the jury, but it does show that both parties appeared by attorney, and that a trial was had, evidence submitted, issue joined, verdict rendered and judgment against Haber and Anderson. On the 15th August, three days after rendition of judgment, Haber filed his affidavit stating his wife was buried on Sunday week before the date of the affidavit, and that his own testimony was material to have been taken in his own behalf, but that, owing to his mental distress, he was unfitted to attend to business, etc. And that witnesses who had not been subpœnaed, were absent at time of trial.

The court will not grant a new trial unless the evidence submitted to the jury appears of record, for the court

cannot know, without seeing that evidence, whether Haber's testimony would have produced a different verdict.

Haber testifies he could have proved, by witnesses, not subpœnaed, certain facts : to this we answer, he cannot obtain a new trial on the ground, that he was guilty of negligence, in not having subpœnaed his witnesses.

As to the pretense that Haber was insane, we think, from his own affidavit, the insanity only amounts to proof that he was a monomaniac, with lucid intervals, when new trials are wanted. This court will probably prescribe for such cases the treatment adopted below.

SIMRALL, J. :

Were the plaintiffs in error entitled to a new trial upon the matters disclosed in the affidavits? The rule, as recognized in Thompson v. Williams, 7 Smedes & Marsh. 275, is that the showing made must discover merits, and the surprise must be such as care and prudence could not provide against. The defendant, notified by the service of the summons, of the pendency of the suit, is bound, at his peril, to appear and make his defense. If he fail to do so, and judgment go against him, he must, in his application for relief, satisfy the court that neither laches or negligence are imputable to him, but that his absence from the trial and want of preparation were referable to some accident, or providential hindrance, beyond his control. It might be conceded that Haber offered a sufficient reason why he did not attend at the trial. But that does not suffice. If his presence, and that of his absent witnesses, would not have produced a different result, why should the plaintiffs be deprived of the advantage of the verdict and judgment? The *onus* is upon Haber to make out a "defense" to the suit, which, by accident and surprise, he was deprived of the opportunity of presenting on the trial. We think the affidavits come short of this. The supplies for the partnership farm were furnished to Lane on his individual credit, and were so charged on Haber's books. Lane offered to give an

agricultural lien, under the statute of 1867, which Haber declined to take, choosing to rely on Lane's personal credit. Haber had, therefore, no lien on the crops of cotton and corn and other property. Haber ought to have made the attachment referred to in his affidavit an exhibit thereto, or he ought to have set out, fully and distinctly, its character, so that the court could see upon what predicate of law it rested. It is strongly inferable from the context that it was sued out under the agricultural lien "act" of 1867. If so, it is plain that the transaction did not come within the terms of that law. Nor is it perceived that the case is helped if the proceedings were instituted under the ordinary attachment law. In order that Haber may claim benefit, under the proceeding, it is not enough to show, simply, that the attachment had been issued and levied, but, also, either that he had obtained a judgment subjecting the property to his debt, or, that the case not having come to trial, he must show a "right" so to subject the property. We cannot say, if the matter of defense set up in the affidavit had been put in evidence before the jury, it would conclusively follow that the plaintiffs should not recover. It may be a link in a concatenation of facts, contributing to a complete defense. But, in applications to displace verdicts regularly rendered, the applicant must make it manifest that injustice has been done. A full and complete defense must be set up, so as to convince the court that, upon another trial, a different result would be reached. This application might properly have been refused upon the vagueness and uncertainty of the character of the legal proceeding as described in the affidavit upon which the plaintiffs in error relied to hold the property in controversy.

*Let the judgment be affirmed.*